**IMG-034**                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4076
_____

MEI HUA ZHENG,
                                          Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A076-209-559)
Immigration Judge:  Honorable Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 11, 2011

Before:  AMBRO, GREENAWAY, JR., and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed  February 8, 2011 )
_____

OPINION
_____

PER CURIAM

Mei Hua Zheng, a citizen of China, petitions for review of the Board of

Immigration Appeals' ("BIA") decision upholding the Immigration Judge's ("IJ") order

denying Zheng's request for asylum and related relief and ordering her removal to China.

For the reasons that follow, we will deny the petition for review.

# I

In 2007, Zheng entered the United States at Guam without valid travel documents. During her arrival interview, Zheng stated that she feared religious persecution in China because she had been kicked out of school for distributing fliers promoting Christianity. The Department of Homeland Security issued her a notice to appear. In response, Zheng filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), citing past persecution and a fear of future persecution based on her religious beliefs.

Zheng later appeared before the IJ and conceded removability. In support of her applications for relief, Zheng testified that she began practicing Catholicism in 2004, when she was 14 years old, after a friend brought her to a church meeting at an unregistered "house church." Thereafter, Zheng attended church most Sunday afternoons. In April 2004, Zheng distributed in her school fliers promoting Catholicism. The following day, she was expelled from school. Her principal gave her a certificate of expulsion, which she tore up in anger. After her expulsion, her mother attempted to enroll her in three different private schools, but she was rejected each time.

Two days after her expulsion, Zheng was approached by police outside of her home. They explained that she would not have any problems if she stopped practicing Christianity, but warned that, if she continued, she would face arrest and torture. Nevertheless, Zheng continued to secretly attend church meetings, albeit less frequently, until she left China in 2007. Zheng testified that, on several occasions, she refrained

2

from attending church because she believed the police were following her. She also testified that, on several occasions, strangers on the street would direct threats at her, stating that people who "join the Catholic Church . . . will die and have a difficult death." J.A. 198. Notably, Zheng did not mention in her asylum statement that she was followed or threatened, and she never filed a supplemental statement including that information. She explained that she wanted to "put all the main stuff in [the application] first," J.A. 196, and that "[t]here are so many things. It's very hard to cover everything." J.A. 200.

The IJ denied relief, reasoning that Zheng's expulsion from school did not amount to persecution. The IJ also made a mixed credibility finding, concluding that Zheng was credible concerning her religious beliefs and expulsion, but that her failure to include in her asylum application that she was followed by the police and threatened by strangers indicated that she did not testify credibly in that regard. Thus, the IJ concluded, Zheng failed to establish a well-founded fear that she would be singled out for persecution if she returns to China. The IJ also held that Zheng failed to demonstrate a pattern or practice of persecution in China against Christians who attend unregistered churches.

The BIA dismissed Zheng's appeal, agreeing with the IJ's determination that she did not demonstrate past persecution or a pattern or practice of persecution in China. The BIA also upheld the adverse credibility determination, reasoning that Zheng's omissions were central to her claim that she felt unsafe in China, and noting that the supporting letters she submitted into evidence made no mention of threats by strangers or police following her. Finally, the BIA concluded that, notwithstanding the adverse credibility

3

determination, Zheng failed to demonstrate a well-founded fear that she would be singled out for persecution if she returns to China. Zheng then filed a timely petition for review.

## II

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA issued its own opinion, we review its decision rather than that of the IJ. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). However, we also look to the decision of the IJ to the extent that the BIA deferred to or adopted the IJ's reasoning. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). We review the Agency's factual determinations, including adverse credibility determinations, for substantial evidence, upholding them unless any reasonable adjudicator would be compelled to reach a contrary conclusion. See Fiadjoe v. Att'y Gen., 411 F.3d 135, 153 (3d Cir. 2005).

First, Zheng argues that the IJ erred in concluding that she did not establish past persecution based on her expulsion and related problems. As the IJ correctly noted, "'persecution' is an extreme concept that does not include every sort of treatment our society regards as offensive." Fatin v. INS, 12 F.3d 1233, 1243 (3d Cir. 1993). Rather, it is limited to "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Id. at 1240. We agree with the Agency that Zheng's expulsion, inability to enroll in another school, and brief encounter with police who warned her not to attend church -- viewed individually or cumulatively -- do not

4

satisfy the high standard for persecution.[1]  Zheng also argues that the IJ and BIA erred in failing to address her contention that the denial of her ability to practice her religion openly amounts to persecution.  However, under our caselaw, it is plainly apparent that this fact, standing alone, is insufficient to establish persecution.  *Cf. id*. at 1241 (requirement that women participate in religion practices, including veiling, does not constitute persecution absent additional factors).

Next, Zheng challenges the Agency's adverse credibility determination.  Because Zheng's asylum application was filed in 2008, her petition is governed by the REAL ID Act of 2005.  Prior to the implementation of the REAL ID Act, minor omissions or inconsistencies that did not go to the heart of an asylum applicant's claim were insufficient to support adverse credibility determinations.  See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).  In contrast, the REAL ID Act permits credibility determinations based on, *inter alia*, inconsistencies that do not go to the heart of the alien's claim.  See 8 U.S.C. § 1158(b)(1)(B)(iii).  We have not applied the REAL ID Act standard in a precedential opinion.  Here, because the omissions identified by the IJ relate to the heart of Zheng's claims for relief, and would thus support an adverse credibility determination even under the pre-REAL ID Act standard, we need not consider whether 8 U.S.C.

---

[1]  Zheng also argues that the IJ and BIA erred in failing to address her contention that the denial of the ability to openly practice one's religion amounts to persecution.  However, Zheng misstates the argument raised before the Agency.  The issue before the Agency was the narrower question whether the problems she faced because of her religious practices -- expulsion, an inability to enroll in schools, and harassment by police officers -- amounted to persecution.

§ 1158(b)(1)(B)(iii) is consistent with due process.  See Wang v. Holder, 569 F.3d 531, 538 (5th Cir. 2009) (canvassing Circuit law on the provision).

In upholding the adverse credibility determination, the BIA agreed with the IJ that Zheng's claims that the police followed her while on her way to church and that strangers threatened her were key to her argument that she harbors a well-founded fear of future persecution if she returns to China.  The BIA concluded that Zheng's omission of those facts from her asylum application, despite having opportunities to supplement her statement, and their conspicuous absence from her supporting letters, supported the IJ's determination that she did not testify credibly.  Zheng argues that, in light of her young age at the time she filed her asylum application, the Agency should have placed less weight on her omissions.  However, the omissions were significant and went to the heart of Zheng's claim that she fears persecution.  Further, we agree with the BIA that Zheng presented no evidence that she would be singled out for persecution, i.e., that authorities are looking for her or have any interest in her.

Finally, Zheng takes issue with the Agency's determination that she failed to demonstrate a well-founded fear of persecution based on a pattern or practice of persecution against Christians in China.  The BIA reasoned that, although Zheng presented evidence indicating that the Chinese government continues to abuse some religious adherents, the evidence also indicated that the government's treatment of religious groups varies from region to region, and that, in some cases, unregistered churches operate only without repercussions.  Thus, as the IJ explained, Zheng failed to

6

demonstrate that China's mistreatment of Christians attending unregistered churches was sufficiently "systemic, pervasive, or organized" to amount to a pattern or practice of persecution. Lie v. Ashcroft, 396 F.3d 530, 537-38 (3d Cir. 2005).

Because Zheng was ineligible for asylum, we also agree that she was unable to meet the higher standard applicable to applications for withholding of removal. See Sioe Tjen Wong v. Att'y Gen., 539 F.3d 225, 236-37 (3d Cir. 2008). Nor did she demonstrate eligibility for CAT protection. See Kamara v. Att'y Gen., 420 F.3d 202, 212-13 (3d Cir. 2005).

Accordingly, we will deny the petition for review.